UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                           2:08-cr-108-FtM-29SPC

JOSE EMIGDIO FLORES
_____

**OPINION AND ORDER**

On December 8, 2008, United States Magistrate Judge Sheri Polster Chappell submitted a Report and Recommendation (Doc. #87) to the Court recommending that Defendant's Motion to Suppress Evidence and Statements of Defendant (Doc. #65) be granted.  The United States filed Objections (Doc. #92)[1], to which defendant filed  a responsive Memorandum (Doc. #93) and Amended Memorandum (Doc. #94).

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or

---

[1] The Court notes that defendant asserts that the Objections had to be filed by December 18, 2008, and thus they are untimely. (Doc. #93, p. 1.)  However, under FED. R. CRIM. P. 45(a)(2) the intermediate Saturday and Sunday are excluded from the ten day calculation, thus the Court finds the Objections to be timely.

specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. REP. 94-1609, § 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 6162, 6163). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

## II.

### A. Factual Findings:

There are no objections filed relating to the status of the case or summary of the evidence and testimony as set forth in the Report and Recommendation (Doc. #87, pp. 1-12). After review, the Court adopts these portions of the Report and Recommendation.

### B. Protective Sweep/Exigent Circumstances:

As the Report and Recommendation correctly stated, searches and seizures inside a home without a warrant are presumptively unreasonable. (Doc. #87, p. 13.) The Report and Recommendation found that exigent circumstances did not justify the warrantless entry and search of defendant's residence, and recommends that the Court find the conduct of the officers was illegal and violated the Fourth Amendment. The government responds that the entry and search of defendant's residence was justified as a protective sweep

(Doc. #92, pp. 2-4) and by exigent circumstances (Doc. #92, pp. 4-16).

**(1) Protective Sweep:**

The government's first argument is that the entry and search was justified as a protective sweep. In Maryland v. Buie, 494 U.S. 325 (1990) the Supreme Court held that a protective sweep of a house incident to an arrest made in the house would be permitted under certain circumstances. Specifically,

> . . . as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, [an officer may] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Buie, 494 U.S. at 334. Thus, "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 337. Officers may lawfully seize any evidence they discover in plain view during a lawful protective sweep. United States v. Hromada, 49 F.3d 685, 690 (11th Cir. 1995).

Unlike <u>Buie</u>, however, the arrests in this case were not made inside the house, but rather took place outside of defendant's house. The first issue becomes whether a protective sweep of the inside of a house can be justified under <u>Buie</u> where the arrest was made outside the house. For the reasons discussed below, the Court concludes that such a protective sweep can be lawful under appropriate circumstances.

Relying on its prior case law, which it found consistent with <u>Buie</u>, the Second Circuit has held that a protective sweep of the inside of a residence incident to an arrest made outside the residence is not *per se* unlawful, and is proper if the arresting officer has (1) a reasonable belief that third persons are inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public. <u>United States v. Oguns</u>, 921 F.2d 442, 446 (2d Cir. 1990). The Eleventh Circuit has applied a similar approach. <u>United States v. Sheikh</u>, 654 F.2d 1057, 1071-72 (5th Cir. Unit A 1981)[2], <u>cert. denied</u> 455 U.S. 991 (1982), <u>overruled on other grounds</u>, <u>United States v. Zuniga-Salinas</u>, 952 F.2d 876 (5th Cir. 1992) ("Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest even if the

---

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

-4-

arrest is made near the door but outside the lodging where they have reasonable grounds to believe that there are other persons present inside who might present a security risk."); United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983)("Law enforcement officers who have lawfully apprehended a suspect on a portion of a structure (here it was an open porch built as a part of the home) which they have reason to believe contains dangerous third persons who might pose a threat to their safety have a right to conduct a reasonable security check of such premises."); United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991) (en banc), cert. denied 112 S. Ct. 299 (1991)(protective sweep of residence upheld where the arrest had been made in the garage); United States v. Kimmons, 965 F.2d 1001, 1009 (11th Cir. 1992), cert. granted and judgment vacated on other grounds, Small v. United States, 508 U.S. 902 (1993)(sweep of house proper after suspect ordered out and placed under arrest). As stated in United States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995): "That the police arrested the defendant outside rather than inside his dwelling is relevant to the question of whether they could reasonably fear an attack by someone within it. The officers' exact location, however, does not change the nature of the appropriate inquiry: Did articulable facts exist that would lead a reasonably prudent officer to believe a sweep was required to protect the safety of those on the arrest scene?"

While a protective sweep of a house can be lawful where the arrest occurs outside the house, the next issue is whether the

circumstances of this case support such a protective sweep. Here, the officers decided that as part of a single operation they would arrest the three persons waiting in the driveway in front of the residence and secure the house to prevent flight and the destruction of evidence. Four marked police cars arrived at the residence; officers either in uniform or with plain police markings approached the individuals with firearms drawn; one group of officers arrested the persons, while another group of officers simultaneously entered the open front door of the house and conducted the protective sweep.

As an initial matter, the Court finds that the arrests of the three defendants outside the house was lawful. "The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." Florida v. White, 526 U.S. 559, 565 (1999). The facts summarized in the Report and Recommendation clearly establish that the officers had at least probable cause to believe that defendants Arias Garcia, Xavier Medina San Toyo, and Arturo Perez Medina, the three persons standing in defendant's front driveway waiting for the money courier, had committed a federal drug felony. The front driveway of the residence where the three persons were standing is a "public" place for purposes of an arrest. United States v. Santana, 427 U.S. 38, 42 (1976); United States v. Goddard, 312 F.3d 1360, 1363 (11th Cir. 2002). The officers did not need a warrant to approach the front of the residence to arrest the three people

waiting outside. United States v. Knight, 451 F.2d 275, 276-79 (5th Cir. 1971); Tobin, 923 F.2d at 1511; United States v. Taylor, 458 F.3d 1201, 1204-05 (11th Cir. 2006). While each of these three cases involved officers approaching a house to question a suspect, not make an arrest, the principle applies to any legitimate police purpose. "The Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." Taylor, 458 F.3d at 1204. Therefore, the officers could lawfully go onto the driveway to arrest the three individuals.

Additionally, the Court finds that the facts and reasonable inferences from those facts establish that a reasonably prudent officer would believe that the house harbored at least one individual posing a danger to the officers making the arrest. At the time the officers made the arrest of the three persons standing in the driveway, the officers knew there was six pounds of crystal meth in the garage, at least two suspects in the house, and that the suspects had been extremely security-conscious through the transaction. Therefore, unless there is a legal reason which prevented the officers from making the arrest, the Court finds that the protective sweep was proper.

**(2) Exigent Circumstances:**

After reviewing the material facts, the Report and Recommendation found that: (1) the actions of the officers in approaching the residence to arrest the three persons outside

caused the exigency they attempt to use to avoid the warrant requirement, (2) for this reason the flight of two defendants upon seeing the officers was not sufficient to justify a warrantless search, and (3) the officers had sufficient time to obtain an anticipatory search warrant and were required to do so. (Doc. #87, pp. 18-23.)  Since the officers did not have an anticipatory search warrant, the Report and Recommendation found the conduct unlawful. For the reasons set forth below, the Court disagrees with the first and third finding and concludes that the entry and search of the residence were lawful.

The government argues that the entry into the residence and seizure of the items were proper because there was probable cause (a fact admitted by defendant) and sufficient exigent circumstances (a fact disputed by defendant).  The general legal principles concerning exigent circumstances set forth by the government (Doc. #92, pp. 4-5) do not markedly differ from the general legal principles set forth in the Report and Recommendation (Doc. #87, pp. 13-15.)  After review, the Court adopts these general legal principles as set forth in the Report and Recommendation.  The dispute arises as to the application of the principles to the facts of this case, and in particular the application of United States v. Santa, 236 F.3d 662 (11th Cir. 2000).

It is well-settled in the Eleventh Circuit that officers cannot avoid obtaining a search warrant by creating exigent circumstances.  Santa, 236 F.3d at 671; Tobin, 923 F.2d at 1511.

The circumstances in this case would not have allowed the officers to obtain a search warrant for the residence, and defendant does not argue to the contrary.  However, defendant argues that the officers could have and should have obtained an anticipatory search warrant for the residence, and that they were required to do so instead of arresting three persons so close to the residence thus necessitating a protective sweep of the residence.

The law in the Eleventh Circuit regarding anticipatory search warrants has evolved.  In United States v. Nixon, 918 F.2d 895 (11th Cir. 1990), the Court stated "[w]e know of no precedent, furthermore, that *requires* law enforcement officers to try to obtain an anticipatory warrant if they may possibly be able to justify one." Nixon, 918 F.2d at 903 n.6.  In Santa the Court found that anticipatory search warrants are not *per se* unconstitutional, and that under certain circumstances law enforcement officers are required to obtain an anticipatory search warrant.  Santa, 236 F.3d at 673-74.

Neither of the parties nor the Report and Recommendation cite the Supreme Court case addressing anticipatory search warrants.  In United States v. Grubbs, 547 U.S. 90 (2006), the Supreme Court held that anticipatory search warrants were not categorically unconstitutional, and set forth their requirements:

> Anticipatory warrants are, therefore, no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will*

> *be* on the described premises (3) when the warrant is executed. It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met. (If that were the extent of the probability determination, an anticipatory warrant could be issued for every house in the country, authorizing search and seizure *if* contraband should be delivered-though for any single location there is no likelihood that contraband will be delivered.) Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises. In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is probable cause to believe the triggering condition *will occur*. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.

Grubbs, 547 U.S. at 96-97 (internal citation omitted.)[3] Applying these standards, the Court finds that the officers did not have sufficient information to obtain an anticipatory search warrant until 6:30-6:38 p.m. and that by then there was insufficient time to obtain such an anticipatory search warrant.

---

[3]This imposes a more stringent requirement than found in the Report and Recommendation, which stated: "The fact that the contraband was not presently seen by the CS at the residence is immaterial, so long as there is probable cause to believe that it would be there when the search warrant was executed after the CS informed Spec. Agt. Kopper the drugs were present." (Doc. #87, p. 22.)

As Grubbs stated, an anticipatory search warrant cannot issue until the officers have probable cause that the triggering condition will occur. The triggering condition in this case was the confidential source seeing the crystal meth; as the officers correctly recognized, given the multiple occasions when this group of suspects had promised drugs but failed to deliver, nothing short of seeing the drugs was sufficient. The confidential source reported at 6:30 or 6:38 p.m. (the time was variously stated in the testimony) that he had seen the crystal meth. Given the factual background with these particular suspects, there was not probable cause to believe that the drugs would be there prior to that time. Under the terms of the agreement with the suspects, $23,000 was to be brought by a female money courier immediately thereafter, and the courier was to have been within minutes of the house. Given the suspects' history of caution in the transaction and their stated desire to do the transaction quickly, there was simply not sufficient time to obtain an anticipatory search warrant, even by telephone or electronic media. This is not based upon speculation, but upon the reasonable inferences of the facts known to the officers at the time.

The officer's inability to develop probable cause that the triggering event (drugs being present) for an anticipatory search warrant would take place and the urgency of the situation are what distinguishes this case from Santa. Unlike this case, in Santa the defendants were reliable in producing the drugs and had not given

law enforcement any reason to doubt where and when the drug transaction would take place. Santa, 236 F.3d at 665-667. Furthermore, in Santa, during the drug buy, the defendants did not know how far the money courier was located, unlike here where the defendants believed the money courier to be only minutes away. See id. at 671. These material differences make Santa distinguishable from the facts of this case.

The Court also disagrees with the finding in the Report and Recommendation that the exigent circumstances were caused by the agents as they approached the residence. (Doc. #87, p. 19.) The exigent circumstances were caused by the suspects' adamant refusal to show the drugs to the confidential source until literally the last minutes before the money courier was to arrive. The Court does agree that the flight by the suspects inside the house was not sufficient to justify a warrantless search (Doc. #87, pp. 19-20). The exigency was not due to the flight, but by the circumstances which existed prior to the approach by the officers.

Therefore, the Court finds that there were sufficient exigent circumstances to justify the conduct of the officers, including the arrest of the three persons outside the house and the entry and protective sweep of the house; that these exigent circumstances did not include the flight of the persons from the inside of the house, since this did not happen until after the officers had already started entering the house; the officers had a proper basis to enter the house to perform a protective sweep; the officers'

protective sweep was properly limited, and the observation and subsequent seizure of the drugs was lawful.  The Court therefore rejects the Report and Recommendation's findings and conclusions to the contrary.

**C. Defendant's Consent to Search Residence:**

The Report and Recommendation also found that the consent, assuming it was voluntary, was the product of the unlawful search and therefore not valid.  (Doc. #87, pp. 24-27.)  Because the Court has found the entry and search to be valid, the Court rejects this finding.  After reviewing all the evidence, the Court finds that defendant's consent was voluntary and therefore provides an alternative basis to support the search of the residence.

**D.  Defendant's Statements:**

**(1) Pre-<u>Miranda</u> Statements:**

Defendant argued that his pre-<u>Miranda</u>[4] statements made at his residence should be suppressed because of the absence of <u>Miranda</u> warnings.  After the protective sweep, Special Agent Kopper asked defendant if he was the owner of the residence and defendant said he was.  Special Agent Kopper then asked him to prove it, and defendant took the agent into the kitchen, opened a kitchen drawer, and showed him mail with defendant's name on it.  The government argued that the questions were routine questions not subject to <u>Miranda</u>.  The Report and Recommendation found that under the

---

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

circumstances of this case <u>Miranda</u> warnings were required.  (Doc. #87, pp. 28-30.)  The Court agrees.

The government argues that the Supreme Court has held that routine questions need not be preceded by a <u>Miranda</u> warning, citing <u>Pennsylvania v. Muniz</u>, 496 U.S. 582 (1990).  (Doc. #92, p. 18.) <u>Muniz</u>, however, held that routine <u>booking</u> questions need not be preceded by <u>Miranda</u> warnings because they are not designed to elicit incriminating admissions.  <u>Muniz</u>, 496 U.S. at 600-02. Nothing in the circumstances of the questioning at issue was similar to the booking process, and the inquiries were clearly intended to elicit an incriminating response.

**(2) Post-<u>Miranda</u> Statements**:

The Report and Recommendation found that defendant's post-<u>Miranda</u> statement was tainted by the illegal search of his residence and should therefore be suppressed.  (Doc. #87, pp. 31-32.)  Since the Court has found the search was not illegal, it rejects this recommendation.

<u>          </u>Accordingly, it is now

**ORDERED**:

1.  The Magistrate Judge's Report and Recommendation (Doc. #87) is **accepted and adopted in part and is rejected in part**, as set forth above.

    2.   Defendant's Motion to Suppress Evidence and Statements of Defendant (Doc. #65) is **GRANTED** as to the pre-<u>Miranda</u> statements at the residence and is otherwise **DENIED**.

    **DONE AND ORDERED** at Fort Myers, Florida, this   7th   day of January, 2009.

*[signature]*

JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record
DCCD